Eastern District of Kentucky
F I L E D
DEC 0 6 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 06-125-GWU

DONALD TAYLOR,                            PLAINTIFF,

VS.                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). It is currently before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO SUMMARY JUDGMENT MOTIONS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

1

Taylor

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Taylor

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Taylor

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

Taylor

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## STANDARDS APPLICABLE TO MOTIONS TO REMAND

In assessing that portion of the plaintiff's brief which could be interpreted as a separate motion to remand, it must be noted the pertinent federal statute provides that:

> The Court may . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. Section 405(g) (emphasis added).

While "good cause" for failure to incorporate such evidence might be established when the additional records were not compiled until after the administrative hearing, Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986), the fact that the plaintiff did not seek to have the record remain open to be able to submit evidence militates against such a finding, Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (6th Cir. 1984).

To be "material", the documents must be "both relevant and probative", "bearing directly and substantially on the matter in dispute", or "likely to have produced a different administrative result". Huffler v. Heckler, 59 F. Supp. 626, 627 (S.D. Ohio 1984). In order to satisfy this materiality criterion, the claimant must demonstrate that there is a reasonable probability that the Administrative Law Judge

7

(ALJ) would have reached a different conclusion if presented with the new evidence. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711 (6th Cir. 1988). In determining whether to remand a case, the Sixth Circuit Court of Appeals has distinguished between new evidence of the claimant's condition at the time of the administrative hearing and evidence of a subsequent deterioration or change in his condition. The former is deemed material; the later is not. See Sizemore, 865 F.2d at 712.

## DISCUSSION

The administrative decision identified Taylor's "severe" impairments as discogenic and degenerative disorders of the back, depression, and a panic disorder. (Tr. 26). These conditions prevented the plaintiff from performing more than a limited range of light level work and rendered Taylor unable to perform his past relevant work. (Tr. 24, 26). Because a vocational expert (VE) was able to identify significant numbers of alternative jobs which could potentially be performed, the claim for benefits was denied. (Tr. 25, 26, 27).

The plaintiff argues that his decreased visual acuity should have been considered to be a "severe" impairment. The plaintiff had not mentioned such a condition as a potential source of benefits originally. (Tr. 63). There were 2001 references to a history of a thinned cornea and impaired vision of 20/200 on the right in mid-2001 (Tr. 146) but no current abnormal findings in the vast majority of treatment notes from 2001 through 2004 (Tr. 138, 139, 140, 142, 144, 145, 170) and

Taylor

there was a reference to 20/50 and 20/30 vision, as corrected, by a 2004 consultant (Tr. 201). Two medical reviewers found no visual limitations had been established as of early 2004. (Tr. 208, 214). This evidence alone would provide support for a decision to find that the plaintiff's visual difficulties did not amount to a "severe" impairment.

The plaintiff did, however, mention decreased vision at the administrative hearing in 2005 and commented that he was "eventually" going to have to have cornea transplants in both eyes. (Tr. 274). Unfortunately for the plaintiff, his attorney at the time did not follow up on questioning which elicited this response. (Tr. 280-286). Furthermore, he indicated nothing was missing from the file (Tr. 261) and did not mention that any further examinations were contemplated. It was almost two months after the administrative decision was issued (Tr. 27) that an additional medical report was submitted to the Appeals Council (Tr. 13); this report indicated that shortly beforehand, the plaintiff had been examined by an ophthalmologist and was found to be currently in need of corneal transplants (Tr. 251). Again, very unfortunately for the plaintiff, counsel has not specifically addressed the issue of why this or similar information could not have been provided to the ALJ, as to meet the requirements for a remand under sentence six of 42 U.S.C. Section 405(g).[1]

---

[1] The cover letter in the transcript, associated with the exhibits submitted to the Appeals Council, simply states that this record was not "available" until then with no further details (Tr. 13), which is not a sufficient excuse.

9

Taylor

Moving to another issue, the Court notes that the ALJ relied on the non-examining medical reviewer in framing the hypothetical mental factors. (Compare Tr. 219-220 with Tr. 287). The plaintiff had testified that he had problems with post traumatic stress disorder, depression and a panic disorder and was being treated at "Adanta." (Tr 273). Multiple sources at the clinic cited the plaintiff's GAF level at 52 (Tr. 175, 186) or 50 (Tr. 185) and a licensed social worker noted some "poor or none" mental abilities (Tr. 178-180); while some of these opinions were not from the highest tier of mental health professionals, the low disabling GAF of 50[2] came from a psychiatrist (Tr. 185) and it was not specifically addressed in the ALJ's opinion. Again, unfortunately for the plaintiff, the mental health issue is not being current raised by counsel.

Fortunately, counsel does focus on the plaintiff's cervical spine problems and, especially, on a disability opinion offered from Dr. El-Naggar. An MRI done in the first part of 2002 (about a year before the alleged onset date) had shown, according to the radiologist, a suggestion of a focal "protrusion" at C5-6, foraminal stenosis at C6-7, a large osteophyte complex causing foraminal stenosis and cord distortion at C3-4 and a probable congenital fusion at C2-3. (Tr. 130). Treating Physicians Amr O. El-Naggar (Tr. 171) and David Flynn (Tr. 136) and even subsequent Medical Reviewer

---

[2]Scores between 41 and 50 are consistent with "serious. . .impairment in social, occupational or school functioning" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.). (DSM-IV).

10

Taylor

J. E. Baez-Garcia (Tr. 206-207) felt that this MRI results meant multiple disc herniations.

In September, the plaintiff underwent a cervical epidural steroid injection at C6 for what was described by the plaintiff's surgeon, Howard Wesley Lynd, as a herniated disc with radiculopathy. (Tr. 124-125). However, the injections and physical therapy were unsuccessful and Treating Neurosurgeon El-Naggar recommended surgery, stating that it would be risky for the patient not to have surgery. (Tr. 168). Nevertheless, Taylor reportedly could not afford the surgery and El-Naggar documented continuing decreased sensation in the right C6 distribution, weakness of the right biceps muscle and wasting of the brachial radialis muscle. (Tr. 167).[3] Not only did El-Naggar mention "permanent disability" several times (Tr. 166, 167) but he also completed a form indicating specific limitations, such as only occasionally lifting 10 pounds and having "significant limitations" in repetitive reaching, handling, and feeling (Tr. 164). El-Naggar's permanent disability opinion (but not his specific form assessment) was rejected by the medical reviewer merely because it was an opinion "reserved for the Commissioner" (Tr. 210), and without a related discussion which might have provided a basis to reject the form assessment as well. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

---

[3]Muscle wasting was also confirmed by David Flynn. (Tr. 136).

11

Taylor

Given the fact that the two other examining sources did not expressly contradict El-Naggar, and the fact that his form assessment was not fully addressed, the case will be remanded for further discussion.

This the ___6___ day of December, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE